UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------- X
                                          :

BECHARA et al.,
                                          :

                    Plaintiffs,        :      05 Civ. 3825 (LAP)

                                          :

         - against -                   :

THE REPUBLIC OF ARGENTINA,        :

                    Defendant.       :

                                          :

----------------------------------------------------------------------X
ARRIGONI et al.,                       :

                                          :

                    Plaintiffs,        :      05 Civ. 2275 (LAP)

         - against -                   :

THE REPUBLIC OF ARGENTINA,         :

                    Defendant.       :

                                          :

---------------------------------------------------------------------- X  *(captions continued on next page)*

**MEMORANDUM OF THE REPUBLIC OF ARGENTINA IN OPPOSITION TO
PLAINTIFFS' MOTIONS TO REINSTATE THE VACATED *PARI PASSU*
INJUNCTIONS**

CLEARY GOTTLIEB STEEN & HAMILTON LLP

Carmine D. Boccuzzi
One Liberty Plaza
New York, New York 10006
(212) 225-2000

*Of Counsel*:
Rahul Mukhi

*(captions continued from previous page)*

```
------------------------------------------------------------------ X
                                                                   :
BONVECCHI et al.,                                                  :
                                                                   :
                              Plaintiffs,                          :   05 Civ. 2159 (LAP)
                                                                   :
              - against -                                          :
                                                                   :
THE REPUBLIC OF ARGENTINA,                                         :
                                                                   :
                              Defendant.                           :
                                                                   :
------------------------------------------------------------------ X
                                                                   :
FORGIONE et al.,                                                   :
                                                                   :
                              Plaintiffs,                          :   06 Civ. 15171 (LAP)
                                                                   :
              - against -                                          :
                                                                   :
THE REPUBLIC OF ARGENTINA,                                         :
                                                                   :
                              Defendant.                           :
                                                                   :
------------------------------------------------------------------ X
                                                                   :
ALZUGARAY et al.,                                                  :
                                                                   :
                              Plaintiffs,                          :   06 Civ. 3976 (LAP)
                                                                   :
              - against -                                          :
                                                                   :
THE REPUBLIC OF ARGENTINA,                                         :
                                                                   :
                              Defendant.                           :
------------------------------------------------------------------ :
                                                                   X
```

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ........................................................................................................ 3

    A.  This Court, Affirmed By The Second Circuit, Vacated The Original *Pari Passu* Injunctions In 2016................................................................................... 3

    B.  Since 2016, The Republic Has Settled With The Vast Majority Of Its Creditors............................................................................................................. 5

    C.  The Court Rejects Post-Settlement *Pari Passu* Claims In *White Hawthorne*...................................................................................................... 6

    D.  The Present Motions ...................................................................................... 7

ARGUMENT ............................................................................................................. 8

I.     PLAINTIFFS ARE NOT ENTITLED TO *PARI PASSU* INJUNCTIONS ......... 8

    A.  The Republic Is Not In Breach Of The Pari Passu Clause ........................... 9

    B.  The Balance Of The Equities And The Public Interest Also Require Denial Of The *Pari Passu* Injunctions ................................................................... 14

II.    PLAINTIFFS' REQUEST FOR SEPARATE *PARI PASSU* DAMAGES IS, IN THE WORDS OF *WHITE HAWTHORNE,* "LEGALLY UNSOUND" AND NOT AN "APPROPRIATE" REMEDY .......................................................... 16

III.   SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE PLAINTIFFS DID NOT PLEAD *PARI PASSU* CLAIMS IN THE COMPLAINT ................ 19

IV.  SUMMARY JUDGMENT AND ISSUANCE OF AN INJUNCTION ARE NOT APPROPRIATE FOR PLAINTIFFS WHO HAVE NOT SUBMITTED ADEQUATE PROOF OF THEIR HOLDINGS ................................................ 20

CONCLUSION ....................................................................................................... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajdler v. Province of Mendoza,*
No. 17 Civ. 1530 (VM), 2017 WL 3635122 (S.D.N.Y. Aug. 2, 2017) .............................. 13

*Aurelius Capital Master, Ltd. v. Republic of Argentina,*
644 F. App'x 98 (2d Cir. 2016) ..................................................................... 1, 4-5, 9

*Colella v. Republic of Argentina,*
No. 04 Civ. 2170 (TPG), 2006 WL 399449 (S.D.N.Y. Feb. 21, 2006)............................. 21

*D.C.A. Grantor Trust v. Republic of Argentina,*
616 F. App'x 30 (2d Cir. 2015) ....................................................................... 19

*Dotson v. Griesa,*
398 F.3d 156 (2d Cir. 2005)............................................................................ 17

*EM Ltd. v. Republic of Argentina,*
131 F. App'x 745 (2d Cir. 2005) ...................................................................... 16

*Hagans v. Lavine,*
415 U.S. 528 (1974)..................................................................................... 19

*Ladjevardian v. Republic of Argentina,*
No. 04 Civ. 2710 (TPG), 2016 WL 3039189 (S.D.N.Y. May 26, 2016), *aff'd*, 663 F.
App'x 77 (2d Cir. 2016).......................................................................... *passim*

*Mazzini v. Republic of Argentina,*
No. 03 Civ. 8120 (TPG), 2005 WL 743090 (S.D.N.Y. Mar. 31, 2005), *aff'd*, 282 F.
App'x 907 (2d Cir. 2008) ......................................................................... 20-21

*Melvin v. UA Local 13 Pension Plan,*
236 F.R.D. 139 (W.D.N.Y. 2006)....................................................................... 20

*Monsanto Co. v. Geertson Seed Farms,*
561 U.S. 139 (2010)................................................................................... 9, 14

*New York Civil Liberties Union v. New York City Transit Auth.,*
684 F.3d 286 (2d Cir. 2012)............................................................................... 9

*NML Capital, Ltd. v. Republic of Argentina*,
699 F.3d 246 (2d Cir. 2012)................................................................................... 11

*NML Capital, Ltd. v. Republic of Argentina*,
727 F.3d 230 (2d Cir. 2013)................................................................. 8-9, 13, 17, 18

*NML Capital, Ltd. v. Republic of Argentina*,
No. 14 Civ. 8601 (TPG), 2015 WL 3542535 (S.D.N.Y. June 5, 2015)............................ 20-21

*NML Capital, Ltd. v. Republic of Argentina*,
No. 08 Civ. 6978 (TPG), 2016 WL 836773 (S.D.N.Y. Mar. 2, 2016) .............................. *passim*

*NML Capital, Ltd. v. Republic of Argentina*,
No. 08 Civ. 6978 (TPG), 2016 WL 11164173 (S.D.N.Y. Apr. 22, 2016)......................... 11-12

*Pons v. People's Republic of China*,
666 F. Supp. 2d 406 (S.D.N.Y. 2009)................................................................. 17, 18

*Seijas v. Republic of Argentina*,
No. 04 Civ. 1085 (TPG), 2017 WL 1511352 (S.D.N.Y. Apr. 27, 2017).......................... 11

*White Hawthorne v. Republic of Argentina*,
No. 16 Civ. 1042 (TPG), 2016 WL 7441699 (S.D.N.Y. Dec. 22, 2016) ......................... *passim*

**Rules and Statutes**

Fed. R. C. P. 54(c)............................................................................................ 19

Fed. R. C. P. 56(c)............................................................................................ 20

**Other Authorities**

Republic of Argentina, Annual Report (Form 18-K/A) (Jan. 4, 2018) at D-42, *available
at http://edgar.secdatabase.com/125/119312518002424/filing-main.htm* ......................... 6

Defendant the Republic of Argentina (the "Republic") respectfully submits this memorandum in opposition to the motions for injunctive and other relief filed by plaintiffs proceeding *pro se* in each of the following actions: *Bechara v. Republic of Argentina*, No. 05 Civ. 3825 (LAP) (S.D.N.Y. Apr. 18, 2018), ECF Nos. 45-49, 51-60; *Alzugaray v. Republic of Argentina*, No. 06 Civ. 3976 (LAP) (S.D.N.Y. Apr. 23, 2018), ECF Nos. 32-35; *Arrigoni v. Republic of Argentina*, No. 05 Civ. 2275 (LAP) (S.D.N.Y. Apr. 25, 2018), ECF Nos. 37-41; *Bonvecchi v. Republic of Argentina*, No. 05 Civ. 2159 (LAP) (S.D.N.Y. Apr. 25, 2018), ECF Nos. 47-51; and *Forgione v. Republic of Argentina*, No. 06 Civ. 15171 (LAP) (S.D.N.Y. Apr. 25, 2018), ECF No. 33-37 (collectively, the "Motions").

## PRELIMINARY STATEMENT

The Motions represent an attempt to revive *pari passu* injunctions that were vacated by *this* Court on April 22, 2016 and denied again by *this* Court in *White Hawthorne* on December 22, 2016. Now, the instant plaintiffs recycle the unsuccessful claims from *White Hawthorne* – claims that they never properly pleaded in these actions in the first place – and simply ignore the holdings of Judge Griesa and the Second Circuit that the Republic is no longer acting in breach of the *pari passu* clause. *All* of the plaintiffs' arguments and claims in seeking new *pari passu* injunctions have already been considered and rejected.

The Second Circuit affirmed this Court's vacatur of the *pari passu* injunctions, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG), 2016 WL 836773 (S.D.N.Y. Mar. 2, 2016), based on the Republic's commitment to "repeal the very legislation that spurred the imposition of the Injunctions in the first instance" as part of the current administration's "important" and "good faith" efforts to "to resolve this long-term dispute." *Aurelius Capital Master, Ltd. v. Republic of Argentina*, 644 F. App'x 98, 107-108 (2d Cir. 2016). The Second Circuit ruling paved the way for the Republic's historic settlements with its bondholder creditors

beginning in April 2016, a process that has produced over U.S. $9 billion in settled creditor claims. *See Ladjevardian v. Republic of Argentina,* No. 04 Civ. 2710 (TPG), 2016 WL 3039189, at **1-2 (S.D.N.Y. May 26, 2016) (stating that the Republic's first capital raise for settlement payment in April 2016 itself was over U.S. $9 billion), *aff'd*, 663 F. App'x 77 (2d Cir. 2016).

Plaintiffs are among a few who have not participated in the Republic's settlement proposals in an attempt "to hold out for something better." *Id.* at *1. In December 2016, a different group of holdout plaintiffs continued to claim that the Republic was somehow still in breach of the *pari passu* clause. They based their claim on the same Argentine law that the Republic enacted to execute the settlements and repeal the prior "offending legislative enactments." *White Hawthorne v. Republic of Argentina*, No. 16 Civ. 1042 (TPG), 2016 WL 7441699, at *3 (S.D.N.Y. Dec. 22, 2016). In *White Hawthorne*, this Court rejected this implausible claim, holding that "due to the Republic's repeal of its offending 'legislative enactments' and the Macri administration's resolve to settle with its creditors, the 'combination' and 'course of conduct' that formerly constituted breach of the pari passu clause *no longer exists*.'" *Id.* (emphasis added). The Court thus refused to revive the vacated *pari passu* injunctions because the legislation that the *White Hawthorne* plaintiffs cast as a "New Lock Law," in fact "represent[ed] a changed circumstance that satisfied the conditions for *vacating* the pari passu injunctions," 2016 WL 7441699, at *3 (emphasis added). The Court also rejected all of plaintiffs' allegations that any other existing legislation constituted "new conduct on the part of the Republic [that] establish[es] a breach of the pari passu clause." *Id*. Thus the Court held again that "the Republic is not now in breach of the pari passu clause." *Id*. The Court also held that the requested injunctions were not supported by the equities and the public interest, given the Republic's successful efforts to settle claims by its creditors. *See id.* at *4.

Plaintiffs have not introduced any new arguments or proof of new conduct by the Republic that justify reversing course from these precedents of this Court and the Second Circuit. The Motions should be denied for several reasons:

*First,* the Republic is not in breach of the *pari passu* clause because it has repealed the so-called "Lock Law" and "Sovereign Payment Law," and has maintained a field clear of any legislation subordinating plaintiffs' debt.

*Second,* re-imposition of the *pari passu* injunctions is not supported by the equities and the public interest because, among other reasons, it would jeopardize the enormous efforts that the Republic, the Court, settling plaintiffs, and holders of the Republic's restructured debt have all made over the course of the past two years towards resolving this litigation. *NML Capital,* 2016 WL 836773, at *11, *aff'd sub nom.*, 644 F. App'x 98; *White Hawthorne,* 2016 WL 7441699, at *4.

*Third,* plaintiffs also assert a claim for separate money damages for the purported *pari passu* breach, which the Court in *White Hawthorne* ruled does not exist, *id.* at **4-5, and no court has *ever* recognized.

For these reasons and the other reasons set forth below, the Motions should be denied.

## BACKGROUND

### A.    This Court, Affirmed By The Second Circuit, Vacated The Original *Pari Passu* Injunctions In 2016

On June 18, 2014, the so-called *pari passu* injunctions went into effect in 13 actions, barring the Republic from making payments on certain external indebtedness—including Exchange Bonds that had been previously issued to holders of non-performing global debt— unless the Republic made a ratable payment to the plaintiffs in those actions. *See* Order § 2(a), *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Feb. 23, 2012),

ECF No. 371.[1]  Numerous additional plaintiffs then filed similar motions and "sought the same *pari passu* ruling that the other plaintiffs had obtained in the original thirteen actions."  *NML Capital,* 2016 WL 836773, at *1.  At the time, the Court granted many such motions.  *Id.*

Two years later, however, the Court determined that the Republic was no longer in breach of the *pari passu* clause *and* that it was no longer equitable and in the public interest to maintain the injunctions.  *Id.* at *9.  In previously granting the *pari passu* motions, Judge Griesa had deemed the Republic to have legally subordinated certain plaintiffs' debt under the so-called "Lock Law" and "Sovereign Payment Law."  *Id.*  Following the Republic's decision to repeal those two statutes in furtherance of settling claims with its creditors, the Court vacated the *pari passu* injunctions on April 22, 2016.  As the Court held, and the Second Circuit affirmed, "repealing legislative obstacles and paying settlements in full—represent a 'dramatic shift in  . . . policy' that justifies vacating the injunctions."  *Id.; Aurelius Capital Master,* 644 F. App'x at 107.

The Court also determined—and the Second Circuit likewise affirmed—that "changed circumstances so altered the equities as to disfavor maintenance of the [*pari passu*] Injunctions," including that the Republic "has shown a good-faith willingness to negotiate with the holdouts."  *Aurelius Capital Master,* 644 F. App'x at 108-09.  "The balance of equities has shifted, for no longer is the Republic exhibiting 'reluctance to entertain meaningful settlement discussions before the Special Master.'"  *NML Capital*, 2016 WL 836773, at *9; *Aurelius Capital Master*,

---

[1] The *pari passu* injunctions were entered in connection with Paragraph 1(s) of the 1994 Fiscal Agency Agreement ("FAA") ("The Securities will constitute (except as provided in Section 11 below) direct, unconditional, unsecured and unsubordinated obligations of the Republic and shall at all times rank *pari passu* without any preference among themselves.  The payment obligations of the Republic under the Securities shall at all times rank at least equally with all its other present and future unsecured and unsubordinated External Indebtedness (as defined in this Agreement).") (Pls. Ex. B).

644 F. App'x at 107 (affirming "finding that, in light of the changed circumstances, keeping the Injunctions in place would no longer be equitable").  As explained by the Court, "[v]acating the injunctions would serve the public interest by ceasing the collateral effects they have on third parties," including the Exchange bondholders, the FAA bondholders who favored settlement, and "the Argentine people generally."  *NML Capital*, 2016 WL 836773, at *10.  Finally, the Court held that "vacating the injunctions serves the public interest by encouraging settlement to resolve disputes generally—particularly such protracted ones—as well as the concern for finality in this particular litigation."  *Id.*

### B.   Since 2016, The Republic Has Settled With The Vast Majority Of Its Creditors

On April 22, 2016, following the vacatur of the injunctions and extensive negotiations supervised by the Court-appointed Special Master, the Republic settled litigation involving the vast majority of claims.  *See Ladjevardian*, 2016 WL 3039189, at *1 ("[A]fter a new administration came to office, the Republic announced a global settlement proposal in February 2016 . . . . After just a few weeks, bondholders owning the vast majority of outstanding claims had agreed to settle, leaving only a few who continued to hold out for something better.").

In accordance with the Court-approved process described in the settlement documents, the Republic issued bonds to raise proceeds to settle outstanding claims.  Decl. of Matthew Dukes ¶ 2, *NML Capital, Ltd. v. Republic of Argentina*, No. 14 Civ. 8601 (TPG) (S.D.N.Y. Apr. 22, 2016), ECF No. 85-2.  Removal of the injunctions has enabled the Republic to pursue the necessary financing and negotiations to settle with hundreds of additional creditors, closing numerous dockets in this Court, and maintaining progress toward an organized, systematic "ending [to] this massive litigation."  *NML Capital,* 2016 WL 836773, at *11.

With the ongoing assistance of the Special Master, the Republic has since 2016 continued good faith negotiations with outstanding plaintiffs, which has produced even more settlements. To date, the Republic's efforts have resulted in payment of over U.S. $9 billion to settling creditors for dismissal of approximately U.S. $3.2 billion in principal amount of claims and the satisfaction of approximately U.S. $4.9 billion in judgments.  *See* Republic of Argentina, Annual Report (Form 18-K/A) (Jan. 4, 2018) at D-42, *available at* *http://edgar.secdatabase.com/125/119312518002424/filing-main.htm.*

### C.    The Court Rejects Post-Settlement *Pari Passu* Claims In *White Hawthorne*

In 2016, settlements continued to progress, and several plaintiffs filed claims in the *White Hawthorne* actions, seeking to re-impose *pari passu* injunctions and requesting monetary damages for breach of the *pari passu* clause.  The Court dismissed the *pari passu* claims in their entirety.  *White Hawthorne,* 2016 WL 7441699, at *12.

The Court in *White Hawthorne* held that the Republic was no longer in breach of the *pari passu* clause and that the requested injunctions were not justified given "significantly changed circumstances" following the election of President Macri, including the repeal of the "Lock Law" and "Sovereign Payment Law."  *Id.* at **3-4.  As a result of the new administration's "resolve to settle with its creditors," *id.* at *3, the Court held that the Republic's recent actions came "nowhere close to the 'extraordinary conduct'" that led the Court "to find breach of the *pari passu* clause" in the past, *id.* at *6.  The Court rejected the *White Hawthorne* plaintiffs' recitations of "ancient history . . . rely[ing] on conduct" that was "no longer occurring."  *Id.*

Among other arguments the Court rejected was plaintiffs' characterization of Argentine Law 27,249, which authorized the settlement and repealed the prior legislation, as a "New Lock Law."  Contrary to the *White Hawthorne* plaintiffs' argument, the Court held that Law 27,249, in

fact "represent[ed] a changed circumstance that satisfied the conditions for *vacating* the *pari passu* injunctions." *Id.* (emphasis added).  Finally, the Court rejected the theory that plaintiffs were entitled to *pari passu* damages as "legally unsound [because] . . . [e]ven if payment to one creditor constituted breach, that act inflicts no separate monetary damage on other holders of unpaid debt" *Id.* at *5.

### D.   The Present Motions

Plaintiffs include judgment and pre-judgment creditors with $5,440,000 in purported bond holdings who have not participated in the Republic's settlement proposals.  *See* Pls. Br. ¶¶ 2, 45-46, 57.[2]  They are among "only a few who continued to hold out for something better." *Ladjevardian*, 2016 WL 3039189, at *1.  Plaintiffs were also among the former "me too" plaintiffs and their *pari passu* motion in 2015 "mirrored motions brought by other plaintiffs." Order, *Bonvecchi v. Republic of Argentina*, No. 15 Civ. 1718 (TPG), (S.D.N.Y. Aug. 10, 2016), ECF No. 16.  After the Republic's settlement, that motion was denied.  *Id.*

Now, these returning plaintiffs have filed *pro se* motions seeking *pari passu* injunctions identical to those vacated on April 22, 2016, and rejected again by the Court in *White Hawthorne*, enjoining the Republic from paying its external creditors, including the holders of the Exchange Bonds and the bonds that were issued to fund the settlement with the Republic's creditors, without making ratable payments to plaintiffs.  *See* Pls. Br. at i-iii.[3]  The plaintiffs also

_____

[2] Unless otherwise indicated, citations are to the brief of José Luis Pou & Silvana Ferrer Ramos, *Bechara v. Republic of Argentina*, No. 05 Civ. 3825 (LAP), ECF No. 49.  The briefs of all seven plaintiffs are substantially identical.

[3] Plaintiffs filed *pro se* appearances in connection with the Motions.  The first of the Motions was filed by Mr. José Luis Pou (a co-holder with plaintiff Silvana Ferrer Ramos) against the Republic on April 18, 2018, *Bechara v. Republic of Argentina*, No. 05 Civ. 3825 (LAP), ECF Nos. 45-49.  That was followed by substantially identical motions filed on April 23, 2018, by Mr. Santiago Boero, *id.* at ECF Nos. 51-55, Mr. Pablo Tomás Boero, *id.* at ECF Nos. 56-60, and Ms. María Cristina Aste (a co-holder with plaintiff Andres Jacinto Alzugaray), *Alzugaray v.*

seek monetary damages for the harm they purport to suffer when the Republic pays other creditors "while paying nothing to Plaintiff[s] and other bondholders." Pls. Br. ¶¶ 42-44. In support of plaintiffs' request, the Motions point to no new conduct by the Republic and cite nothing other than the evidence put before the Court by the *White Hawthorne* plaintiffs of the Republic's alleged former "intransigence." Pls. Br. ¶ 71. Like the *White Hawthorne* plaintiffs, they try to characterize the legislation which authorized the 2016 settlements as a "New Lock Law." Pls. Br. ¶ 35. Plaintiffs here go so far as erroneously inserting into purported quotes from Republic documents plaintiffs' made up "New Lock Law" label so as to mislead the Court into believing that the Republic has characterized its law authorizing settlement as a renewed Lock Law. *Compare* Pls. Brief at 17 (purporting to quote the March 14, 2018 Report of the Chief Ministers to the Congress of the Argentine Nation as including the term "New Lock Law") *with* Pls. Ex. H (attaching the March 14, 2018 Report, with *no mention* of the term "New Lock Law" in the original or the translation). Plaintiffs construe the Republic's settlement proposal, which served as a basis for vacating the *pari passu* injunctions and paving the way for resolution of these cases, itself as a violation of the *pari passu* clause. Pls. Br. ¶ 37.

## ARGUMENT

## I.   PLAINTIFFS ARE NOT ENTITLED TO *PARI PASSU* INJUNCTIONS

"An injunction is an extraordinary measure that is not normally available for breach of contract," *NML Capital*, 2016 WL 836773, at *11, and the Second Circuit has previously cautioned that the requisite "extraordinary behavior" makes "cases like this one [granting *pari*

---

*Republic of Argentina,* No. 06 Civ. 3976 (LAP), ECF Nos. 32-35. Finally, three more identical motions were filed on April 25, 2018 by Mr. Martín Lanus, *Arrigoni v. Republic of Argentina*, No. 05 Civ. 2275 (LAP), ECF Nos. 39-41, Ms. Isabel Mirta Garcia de Coco, *Bonvecchi v. Republic of Argentina*, No. 05 Civ. 2159 (LAP), ECF Nos. 47-51, and Mr. Juan Carlos Vigani (a co-holder with plaintiff Ms. Adriana Elsa Ippolito), *Forgione v. Republic of Argentina*, No. 06 Civ. 15171 (LAP), ECF Nos. 33-37.

*passu* injunctions] . . . unlikely to occur in the future." *NML Capital, Ltd. v. Republic of Argentina*, 727 F.3d 230, 247 (2d Cir. 2013); *see also Aurelius Capital Master,* 644 F. App'x at 107 (plaintiffs "never [have] a legal entitlement to an injunction"). In *White Hawthorne*, the Court held that, although "the Republic's 'extraordinary conduct' during its prior administration led this court to find breach of the clause in December 2011," the Republic's actions since the current administration assumed office simply "come[] nowhere close to the 'extraordinary conduct'" necessary "to find breach of the *pari passu* clause." 2016 WL 7441699, at *3.

In order to obtain the extraordinary relief of a permanent injunction, a plaintiff must show: (a) it has actually succeeded on the merits of the claim; (b) it would suffer irreparable harm in the absence of an injunction; *and* (c) the balance of equities and public interest warrant the relief. *E.g., New York Civil Liberties Union v. New York City Transit Auth.*, 684 F.3d 286, 294 (2d Cir. 2012) (plaintiff must "demonstrate 'actual success' on the merits" and that it "will be irreparably harmed"); *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010) ("plaintiff must demonstrate…that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and []that the public interest would not be disserved by a permanent injunction."). Plaintiffs cannot meet any of these requirements, much less all of them.

### A.  The Republic Is Not In Breach Of The Pari Passu Clause

This Court has held that "the Republic is not now in breach of the *pari passu* clause" because "the 'combination' and 'course of conduct' that formerly constituted breach of the *pari passu* clause no longer exists." *White Hawthorne*, 2016 WL 7441699, at *3. Because there is no breach in the first place, plaintiffs cannot demonstrate success on the merits, nor can they show irreparable harm.

9

The Republic is not currently in violation of the *pari passu* clause because it repealed the so-called "Lock Law" and "Sovereign Payment Law," and has maintained a field clear of any legislation subordinating plaintiffs' debt. *Id.*; *NML Capital, Ltd.*, 2016 WL 836773, at *9. Plaintiffs have themselves acknowledged this dispositive fact that defeats their Motions, including in exhibits attached to their own motion papers. Letter from ADAPD to Daniel A. Pollack, dated Apr. 18, 2017, Decl. of Juan Carlos Vigani at Ex. G at 3, *Forgione v. Republic of Argentina*, No. 06 Civ. 15171 (TPG) (S.D.N.Y. Apr. 25, 2018), ECF No. 37-1 ("The 'Lock Law' 26.017 was repealed by Law 27.249"); Letter from ADAPD to Daniel A. Pollack, dated Mar. 2017, Decl. of Juan Carlos Vigani at Ex. G at 2, *Forgione v. Republic of Argentina*, No. 06 Civ. 15171 (TPG) (S.D.N.Y. Apr. 25, 2018), ECF No. 37-1 ("In the current state of affairs, the Republic of Argentina is not banned from providing adequate treatment to these claims. It is in fact encouraged to do so."). In fact, plaintiffs assert that they were actually *never* subjected to the "Lock Law" in the first place, as they claim to have fallen within an exception to that now-repealed law. *Id.* at 1, (explaining that plaintiffs holdings are among "only a few classes of bonds, issued under NY Jurisdiction, [that] were exempted" from the Lock Law). Because the Republic has not currently, and by plaintiffs' admission has never, legislated the subordination of their debt, the Motions for *pari passu* relief should be denied.

Like the *White Hawthorne* plaintiffs, plaintiffs here "ignore the[] significantly changed circumstances" since the *pari passu* injunctions were granted. 2016 WL 7441699, at *3. Again like the *White Hawthorne* plaintiffs, they also "recite ancient history and rely on conduct that this Court has recognized is no longer occurring." *Id. Compare* Pls. Br. ¶ 43 ("From 2005 to the present, the Republic has engaged in a course of conduct which violates the . . . Equal Treatment Provision . . . [by] issu[ing] bonds . . . with payment obligations that rank higher than those

issued under the 1994 FAA, . . . [and] continuing payment . . . to the holders of the bonds . . . while paying nothing to Plaintiff"), *with NML Capital,* 2016 WL 836773, at *5 ("President Macri's election marked a turning point in the Republic's attitude and actions.") *and Seijas v. Republic of Argentina*, No. 04 Civ. 1085 (TPG), 2017 WL 1511352, at *3 (S.D.N.Y. Apr. 27, 2017) ("Since assuming office, President Macri has made a concerted effort to resolve this outstanding litigation.").  Plaintiffs repeat the same types of allegations, Pls. Br. ¶ 71 (citing former "intransigence"), that the *White Hawthorne* decision set aside as "historical digressions," 2016 WL 7441699, at *3.  They even concede the anachronism by citing a Second Circuit observation in *2010* (i.e., some eight years ago) as "the most recent instance of Argentina's obstinacy."  Pls. Br. ¶ 71.

Plaintiffs' briefs cast Public Law 27,249 as a "New Lock Law," Pls. Br. ¶ 35, claiming that such "legislative obstacles . . . prevent [the Republic] from negotiating with [them]," Pls. Br. ¶ 41.  But in fact, as Judge Griesa held, "[f]ar from reinstituting the policy of the Lock Law, Law 27,249 repealed that statute, along with every other Argentine law that plaintiffs bemoan." *White Hawthorne*, 2016 WL 7441699, at *3; *compare* Law 27,249  ("Acts Nos. 26,017, 26,547, 26,886 and 26,984 and their regulatory and supplemental rules are hereby abrogated") (Freeman Decl. Ex. A),[4] *with* Pls. Br. ¶ 43.  Indeed, Law 27, 249 has been twice determined to "represent[] a changed circumstance that satisfied the conditions for vacating the *pari passu* injunctions." *White Hawthorne*, 2016 WL 7441699, at *3 (citing Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG), at 2 (S.D.N.Y. Apr. 22, 2016)).[5]  In a misguided attempt to

---

[4] All exhibits are attached to the declaration of Richard Freeman, dated May 10, 2018.

[5] The plaintiffs who were previously granted *pari passu* injunctions were found to have no adequate remedy at law because of the obstacles to settlement "codified in [the Lock Law] and [the Lock Law Suspension]," *NML Capital, Ltd. v. Republic of Argentina*, 699 F.3d 246, 255 (2d Cir. 2012), but that is no longer the case because those obstacles are now removed.  *See NML*

demonstrate that the Republic sees Law 27, 249 as a "New Lock Law," plaintiffs insert the defined term within purported quotes from Republic documents improperly and with obvious intent to mislead this Court.  *Compare* Pls. Br. at 17 (purporting to quote the March 14, 2018 Report of the Chief Ministers to the Congress of the Argentine Nation as including the term "New Lock Law") *with* Pls. Ex. H (attaching the March 14, 2018 Report, with *no mention* of the term "New Lock Law" in the original or the translation).  Such sleight of hand provides no support for an injunction.

Plaintiffs also allege that the Republic has been nonresponsive to their overtures to negotiate.  Letter from ADAPD to Daniel A. Pollack, dated Apr. 18, 2017, Decl. of Juan Carlos Vigani at Ex. G at 3, *Forgione v. Republic of Argentina*, No. 06 Civ. 15171 (TPG) (S.D.N.Y. Apr. 25, 2018), ECF No. 37-1 ("dozens of requests for a hearing without response from the Republic reveal a new legal lock").  However, this allegation is not true.  Plaintiffs' exhibits themselves reference responses from the Republic.  *See, e.g.*, *id.* at 11 (addressing "Mr. Bausili's argument"); *id.* (responding to "Mr. Bausili['s] state[ment] that the Argentinean Government has already responded to the ADAPD 'three times.'"); *id.* at 12 (requesting update on "the results of mediation with the Republic").[6]  Even if the allegation were true—which it is not—it is not sufficient to constitute a legislative obstacle of the "extraordinary" magnitude necessary to restrain a nation from freely servicing the vast majority of its debt.

---

*Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG), 2016 WL 11164173, at *1 (S.D.N.Y. Apr. 22, 2016) (certifying that "The Republic repeal[ed] all legislative obstacles to settlement with the FAA bondholders, including the Lock Law and the Sovereign Payment Law").

[6] Any purported delay in settlement negotiations seems attributable to plaintiffs' problems with their own counsel.  Letter from José Luis Pou to Hon. Loretta A. Preska, dated Apr. 26, 2018, *Bechara v. Republic of Argentina*, No. 05 Civ. 3825 (LAP) (S.D.N.Y. Apr. 30, 2018), ECF No. 63 (citing efforts to submit to mediation with the Special Master but stating that "[t]he lawyers in New York . . . voluntarily decided not to intervene," and referencing missed deadlines).

Nor are plaintiffs correct that the settlement violated the *pari passu* clause by "distinguish[ing] between certain identical securities."  Pls. Br. ¶ 37.  This Court has already flatly rejected the argument that it somehow aided a contractual breach when it approved the settlement: "the Republic did not violate the *pari passu* clause . . . when it issued new bonds and settled with its creditors."  *White Hawthorne*, 2016 WL 7441699, at *3; *see also Ladjevardian*, 2016 WL 3039189, at *1 ("With this court's blessing, the Republic returned to the capital markets after years out in the cold." (citing Order, *NML Capital, Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Mar. 15, 2016), ECF No. 922 (approving the settlement payment mechanism))).

At bottom, the Motions "boil down to a simple but inadequate allegation: that mere payment to other creditors, including payment encouraged by this Court to settle claims on other defaulted debt, constitutes a violation of the *pari passu* clause."  *White Hawthorne*, 2016 WL 7441699, at *3; *Compare NML Capital*, 727 F.3d at 247 ("we have not held that a sovereign debtor breaches its *pari passu* clause every time it pays one creditor and not another"); *with* Pls. Br. ¶ 52 ("Argentina's decision to make timely interest payments to other creditors while denying any payments to José Luis Pou violates the Equal Treatment Provision.") *and* Pls. Br. ¶ 50 ("If Argentina wishes to pay one of its creditors . . . it must also pay José Luis Pou"). However, as this Court and others have recognized, the fact that that the sovereign has paid principal and interest on other bonds "without more, is insufficient to state a claim of breach of [the] *pari passu* [clause]."  *Ajdler v. Province of Mendoza*, No. 17 Civ. 1530 (VM), 2017 WL 3635122 (S.D.N.Y. Aug. 2, 2017).[7]  Accordingly, plaintiffs cannot demonstrate success on the

---

[7] Plaintiffs mistakenly believe that they are contractually entitled to be paid "ratably."  Pls. Br. ¶ 57 ("Argentina must pay [plaintiff] the same percentage of what is currently due to [plaintiff] as it pays the other creditors").  "[T]he *pari passu* clause does not itself require a particular

merits nor irreparable harm, particularly in light of the Republic's good faith efforts that have resulted in settlements with the vast majority of creditors. *White Hawthorne*, 2016 WL 7441699, at *3.

### B. The Balance Of The Equities And The Public Interest Also Require Denial Of The *Pari Passu* Injunctions

Not only are plaintiffs not entitled to the relief they seek, the Motions fail to make any of the other necessary showings for an injunction. *See Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 156-57 (2010). Despite plaintiffs' unsupportable claim that the balance of the equities favor an injunction, Pls. Br. ¶¶ 69-72, and that it is in the public interest, Pls. Br. ¶¶ 73-75, "the court has already found that significantly changed circumstances have rendered the *pari passu* injunctions 'inequitable and detrimental to the public interest.'" *White Hawthorne*, 2016 WL 7441699, at *4.

The equities cannot justify an injunction that would have the effect of undoing the very mechanisms that have allowed so many successful settlements to proceed under the auspices of the Court over the course of two years. The settlement entered into in 2016 represented a major effort by the Republic to put an end to more than 15 years of massive litigation since the sovereign default in 2001. Since April 2016, the Republic has paid well over U.S. $9 billion to settling creditors, s*ee Ladjevardian,* 2016 WL 3039189, at **1-2 (stating that the Republic's first capital raise for settlement payment in April 2016 itself was over U.S. $9 billion), which has resulted in the dismissal of claims in the United States for an aggregate nominal amount of approximately U.S. $3.2 billion, plus interest, and the satisfaction of judgments in the amount of

---

remedy," but "the court exercised its inherent equitable discretion" to require the Republic "to make a 'ratable payment' to plaintiffs," whenever it paid on other external indebtedness. *NML Capital,* 2016 WL 836773, at *3 (citing Order § 2(a), *NML Capital Ltd. v. Republic of Argentina*, No. 08 Civ. 6978 (TPG) (S.D.N.Y. Feb. 23, 2012), ECF No. 371).

approximately U.S. $4.9 billion, and the Republic continues to cooperate with the Court-appointed Special Master in "good-faith" negotiations.  *White Hawthorne*, 2016 WL 7441699, at *2 ("the Special Master . . . praised the Republic's leaders for their 'courage and flexibility in . . . dealing with this . . . problem'"); *id.* ("the U.S. Treasury Secretary 'commended the Republic's good-faith efforts'").  The Republic's current conduct simply "comes nowhere close to the 'extraordinary conduct'" necessary "to find breach of the *pari passu* clause." *Id.* at *3.

Re-imposition of the injunctions would also not be equitable and in the public interest because of the devastating "collateral effects they [would] have on third parties," and because "plaintiff[s], armed with an injunction, . . . could scupper [the] deal[s]" that the Republic has reached with numerous other creditors.  *NML Capital*, 2016 WL 836773, at *10.  Indeed, a critical changed circumstance since 2014 is what the operation of the original injunctions *revealed* about the harm caused to third parties, including Exchange Bondholders, and the obstacles they presented to settlement: that information was only speculative in 2014 but, today, those effects have become known.  *Id.* at **10, 12 ("When some plaintiffs first sought injunctive relief, they reassured the court that there was 'no evidence' that the injunctions would 'stop or interfere or impair in any way those exchange offers.'  Yet that is precisely what has happened . . . .  The court cannot countenance an equitable remedy that would allow some plaintiffs to hold other plaintiffs hostage.  If that were truly the injunction's effect, it would surely constitute a form of 'unforeseen obstacle' the court had not previously contemplated.") (citations omitted).

"[E]ncouraging settlement" and "ending this massive litigation" are still in the public interest, which would be upended if the Court granted the requested injunctions.  *NML Capital*, 2016 WL 836773, at *11.  Moreover, "[t]he Court of Appeals has . . . recognized this court's discretion to consider 'the health of the nation' when considering appropriate remedies." *Id.*

(citing *EM Ltd. v. Republic of Argentina*, 131 F. App'x 745, 747 (2d Cir. 2005); *see also id.* at *10 ("the Argentine people generally . . . will benefit if the court vacates the injunctions"). As this Court previously held in *White Hawthorne* and *NML Capital*, all of these interests weigh against re-imposing the *pari passu* injunctions.

Because *pari passu* injunctions would jeopardize the progress that the Republic, the Court, the settling plaintiffs, and holders of the Republic's restructured debt have all made over the course of two years, re-imposing *pari passu* injunctions at this juncture would be grossly inequitable and harmful to the public interest. *NML Capital*, 2016 WL 836773, at *11. Accordingly, even if Plaintiffs could demonstrate that the Republic was in breach of the *pari passu* clause—which they cannot—the Motions should also be denied on these independent grounds.

## II.   PLAINTIFFS' REQUEST FOR SEPARATE *PARI PASSU* DAMAGES IS, IN THE WORDS OF *WHITE HAWTHORNE*, "LEGALLY UNSOUND" AND NOT AN "APPROPRIATE" REMEDY

Plaintiffs' motion also makes passing reference without legal support to entitlement to damages for the alleged breach of the *pari passu* clause. Pls. Brief ¶¶ 42, 44. Any such claim fails.

*First,* as demonstrated above, the Republic is not in breach of the *pari passu* clause, and so any purported claim based on that breach must fail.

*Second,* the Court has already rejected requests for *pari passu* money damages and should do so again here because "[p]laintiffs' theory of separate money damages for each breach of the *pari passu* clause is legally unsound. Even if payment to one creditor constituted breach, that act inflicts no separate monetary damage on other holders of unpaid debt." *White Hawthorne*, 2016 WL 7441699, at *5. Thus, even if there were a breach of the *pari passu* clause—which there is not—"separate damages for breach of the *pari passu* clause would not be

16

an 'appropriate' remedy." *Id.*; *cf. NML Capital*, 727 F.3d at 240 (noting that a "creditor's interest in getting paid is not cognizably affected" by payment to another creditor).  We are not aware of any court that has recognized damages as a remedy for purported breach of a *pari passu* clause, and plaintiffs have cited none.  Where a plaintiff seeks a remedy that is unavailable as a matter of law, the request must be rejected.  *See, e.g., Dotson v. Griesa*, 398 F.3d 156, 166 (2d Cir. 2005) (affirming dismissal where plaintiff not entitled to the *Bivens* damages sought).

The *pari passu* clause is a covenant which, like any other covenant, is designed to govern the behavior of the debtor so as to provide greater assurance of payment.  *See, e.g.*, "Covenant," Wall Street Words (3d ed. 2003) (defining "covenant" as a "clause in a loan agreement written to protect the lender's claim by keeping the borrower's financial position approximately the same as it was at the time the loan agreement was made").  Nothing in the years of litigation over the *pari passu* clause supports plaintiffs' claim here for damages based on the prior breach of the *pari passu* clause, as not a single court decision has affirmed any entitlement to damages for breach of the clause, and this Court repeatedly tied the *pari passu* injunctions to its desire to *enforce payment on the bonds.  See NML Capital*, 2016 WL 836773, at *3 ("Although the *pari passu* clause does not itself require a particular remedy, the court exercised its inherent equitable discretion under Rule 65(d) to craft appropriate relief.  It fashioned injunctions to address the Republic's steadfast refusal to pay").  As this Court held when faced with payment claims in connection with China-issued debt:  "[D]espite their invocations of a purported *pari passu* clause, plaintiffs have but one cause of action:  a right to payment on the [] bonds that was breached in 1960 when the PRC defaulted on the bonds."  *Pons v. People's Republic of China*, 666 F. Supp. 2d 406, 414-15 (S.D.N.Y. 2009) (Holwell, J.).

17

Here as well, plaintiffs have but one damages cause of action:  the right to payment on the bonds in light of the Republic's 2001 default and non-payment on the bonds.  The 1994 FAA reflects a promise to pay by the Republic on certain scheduled payment dates.  *See, e.g.*, US040114AR16 Specimen at A-1-A-2 (setting a "Maturity Date" of "January 30, 1997" and "Interest Payment Dates" of "January 30 and July 30, commencing July 30, 1997") (Freeman Decl. Ex. B).  While a breach of the *pari passu* clause gave plaintiffs the right to accelerate these dates, *see* Pls. Ex. B (1994 FAA) § 12, had plaintiffs sought accelerated payment and not been paid by the Republic, then plaintiffs' remedy would have been damages in the amounts owed on plaintiffs' bonds.  These non-payment damages are exactly what plaintiffs sought (and obtained judgments on)[8] in their claims for "breach of [the Republic's] obligations under the Fiscal Agency Agreement."  *See, e.g.*, Complaint, *Bechara v. Republic of Argentina*, No. 05 Civ. 3825, ¶ 39 (Apr. 14, 2005), ECF No. 1.  In other words, there is no "separate" claim for *damages* for breach of the *pari passu* clause.  *Cf. Pons*, 666 F. Supp. 2d at 415.

At bottom, plaintiffs' theory of "separate damages" for breach of the *pari passu* clause – apart from having no legal support whatsoever – ignores common sense.  A payment to another creditor (*i.e.*, the purported breach of the *pari passu* clause) inflicts no separate monetary damage on unpaid bondholders.  Under plaintiffs' illogical reading, a creditor who is owed money and therefore has a claim for damages for breach of contract somehow incurs that exact same damage each and every time another bondholder is paid.  *Cf. NML Capital,* 727 F.3d at 240 (noting that a "creditor's interest in getting paid is not cognizably affected" by payment to another creditor);

---

[8] The Court has entered judgments for all plaintiffs except for those in the *Forgione* action, where the Court issued an opinion granting plaintiffs' motion for summary judgment but never entered a numerical judgment.  Op., *Forgione v. Republic of Argentina*, No. 06 Civ. 15171 (S.D.N.Y. Sep. 16, 2010), ECF No. 22.

*see also D.C.A. Grantor Trust v. Republic of Argentina*, 616 F. App'x 30, 32 (2d Cir. 2015) (there are no "'superior' rights to property based on subjective equitable assessments of the relative fairness of paying one class of creditor or another").  Thus, according to plaintiffs, they were "damaged" *when this Court allowed the Republic and other bondholders to enter into settlement agreements and upon the payment in fulfillment of any such settlement.  See, e.g.*, Pls. Br. at ¶ 43 ("The Republic has engaged in a course of conduct which violates the . . . Equal Treatment Provision . . . [when] the Republic issued bonds in . . . 2016 . . . and [by] its continuing payment of semi annual interest to the holders of the bonds.").  These claims, in clear disregard for "previous decisions of this court" are "obviously without merit."  *Hagans v. Lavine*, 415 U.S. 528, 537 (1974).

## III.   SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE PLAINTIFFS DID NOT PLEAD *PARI PASSU* CLAIMS IN THE COMPLAINT

Plaintiffs should not be awarded summary judgment on claims that were not pleaded in the Complaint.  Plaintiffs cannot demonstrate success on the merits, when they never requested that the Court adjudicate the *pari passu* issue in the first place.  *See Melvin v. UA Local13 Pension Plan*, 236 F.R.D. 139, 144 (W.D.N.Y. 2006) (denying equitable relief in the form of disgorgement of income and pre-judgment interest to plaintiff participant in union pension plan who never requested such relief in his pleadings).  Although a court may grant "the relief to which a prevailing party is entitled" under Federal Rule of Civil Procedure 54(c), that does not mean that "by resorting to memoranda of law . . . a court may grant judgment and corresponding relief on a claim not properly plead."  *Id.* at 144.

Plaintiffs assert that they are "[e]ntitled [t]o [p]artial [s]ummary [j]udgment [f]or [b]reach [o]f [t]he Equal Treatment Provision" because "[s]ummary judgment should be rendered if the *pleadings*" and factual development "show that there is no genuine issue as to any material fact."

Pls. Br. ¶¶ 46-47 (emphasis added) (citing Fed. R. Civ. P. 56(c)).  However, plaintiffs did not

plead *pari passu* claims when they filed their Complaints in these actions in 2005 and 2006.[9]

Although some of the plaintiffs filed a separate action for *pari passu* claims in a *different*

lawsuit, plaintiffs Juan Carlos Vigani and Adriana Elsa Ippolito never filed any such claim.  *See*

Compl., *Bonvecchi v. Republic of Argentina*, No. 15 Civ. 1718 (TPG) (S.D.N.Y. Mar. 6, 2015),

ECF No. 1.  The Motions for relief based on un-pleaded claims should be denied.

## IV.   SUMMARY JUDGMENT AND OTHER RELIEF ARE NOT APPROPRIATE FOR PLAINTIFFS WHO HAVE NOT SUBMITTED ADEQUATE PROOF OF THEIR HOLDINGS

Finally, the Motion submitted by plaintiff Isabel Mirta Garcia de Coco ("Garcia de

Coco") fails because she has not presented sufficient evidence that she currently owns the bonds

on which she is suing.[10]  This Court has "consistently required" adequate proof of holdings and

has only "been satisfied where the plaintiff supplements its sworn declarations with a recent

account statement from the bank holding the bonds."  *NML Capital, Ltd. v. Republic of*

*Argentina*, No. 14 Civ. 8601 (TPG), 2015 WL 3542535, at *7 (S.D.N.Y. June 5, 2015)

---

[9] *See* Compl., *Bechara v. Republic of Argentina*, No. 05 Civ. 3825 (TPG), (S.D.N.Y. Apr. 14, 2005), ECF No. 1; Compl., *Alzugaray v. Republic of Argentina,* No. 06 Civ. 3976 (TPG) (S.D.N.Y. May 24, 2006), ECF No. 1; Compl., *Arrigoni v. Republic of Argentina*, No. 05 Civ. 2275 (TPG) (S.D.N.Y. Feb. 18, 2005), ECF No. 1; Compl. *Bonvecchi v. Republic of Argentina*, No. 05 Civ. 2159 (TPG) (S.D.N.Y. Feb. 16, 2005), ECF No. 1; Compl. *Forgione v. Republic of Argentina*, No. 06 Civ. 15171 (TPG) (S.D.N.Y. Dec. 15, 2006), ECF No. 1.

[10] Plaintiff Santiago Boero also submits proof that does not support the assertion that he owns $159,000 in principal of bonds bearing ISIN US040114AR16.  *Compare* Mem. Of Santiago Boero ¶ 30, *Bechara v. Republic of Argentina*, No. 05 Civ. 3825 (LAP) (S.D.N.Y. Apr. 23, 2018), ECF No. 55 ("Santiago Boero is the owner of $159,000, principal amount of a global bond identified with ISIN No US040114AR16, maturing in 2017.") *with* Mem. Of Santiago Boero at Ex. A at 1, *Bechara v. Republic of Argentina*, No. 05 Civ. 3825 (LAP) (S.D.N.Y. Apr. 23, 2018), ECF No. 55.  However, the bank statement reflecting $100,000 in principal is consistent with the judgment entered in plaintiff's favor on October 30, 2007.  *See* Judgment, *Bechara v. Republic of Argentina*, No. 05 Civ. 3825 (TPG), No. 29 (S.D.N.Y. Aug. 20, 2007), ECF No. 29 (awarded to plaintiff Santiago Boero on "$100,000 principal amount").

(emphasis added) (citing, *inter alia, Mazzini v. Republic of Argentina*, No. 03 Civ. 8120 (TPG), 2005 WL 743090, at \*4 (S.D.N.Y. Mar. 31, 2005), *aff'd*, 282 F. App'x 907 (2d Cir. 2008)); *see also Colella v. Republic of Argentina,* No. 04 Civ. 2710 (TPG), 2006 WL 399449, at \*2 (S.D.N.Y. Feb. 21, 2006) ("A certification issued mere days after purchase cannot suffice to prove current ownership five months later.").

Plaintiff Garcia de Coco submits two account statements, one as of January 31, 2014 (the "2014 Statement") and a second as of March 31, 2018 (the "2018 Statement").  The 2014 Statement reflects plaintiff's holdings more than four years ago, but it does not support the assertion that plaintiff *continues* to own these bonds.  *Colella*, 2006 WL 399449, at \*2 (denying summary judgment where purported proof of ownership was dated five months before motion was filed).  The 2018 Statement does *not* reflect plaintiff's name and reflects a different account number from plaintiff's account in the 2014 Statement.  And it is not even registered to the same address as plaintiff's account in the 2014 Statement.[11]  Not only is the 2018 Statement insufficient proof upon which to grant summary judgment or other relief, but the 2018 Statement suggests that the bonds may have even been transferred.  *See* Judgment, *Bonvecchi v. Republic of Argentina*, No. 05 Civ. 2159 (TPG) (S.D.N.Y. Oct. 1, 2009), ECF No. 36 ("It is further ORDERED that . . . plaintiff(s) must refrain from selling or otherwise transferring its (their) beneficial interest(s) in the bond(s) involved in this action without advising the Court in advance and obtaining permission of the Court.").  Accordingly, although the Court need not reach the

---

[11] *Compare* Mem. of Isabel Mirta Garcia de Coco at Ex. A at 1-9, *Bonvecchi v. Republic of Argentina*, No. 05 Civ. 2159 (LAP) (S.D.N.Y. Apr. 25, 2018), ECF No. 51 *with* Mem. of Isabel Mirta Garcia de Coco at Ex. A. at 11-19, *Bonvecchi v. Republic of Argentina*, No. 05 Civ. 2159 (LAP) (S.D.N.Y. Apr. 25, 2018), ECF No. 51.

issue because *all* plaintiffs' Motions fail on the grounds set forth above, plaintiff Garcia de Coco's motion also fails because she submitted inadequate proof of ownership.

## CONCLUSION

For the foregoing reasons, the Motions should be denied.

Dated:  New York, New York
        May 10, 2018

                                Respectfully submitted,

                                CLEARY GOTTLIEB STEEN & HAMILTON LLP

                                By: ___/s/ Carmine D. Boccuzzi_____
                                      Carmine D. Boccuzzi (cboccuzzi@cgsh.com)

                                One Liberty Plaza
                                New York, New York 10006
                                (212) 225-2000

                                *Attorneys for the Republic of Argentina*

*Of Counsel*:
Rahul Mukhi